UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIYU DONG,<br><br>                                  Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC;<br><br>                                  Defendant. | Case No.:  19CV02202-DMS (BGS)<br><br>**ORDER REGARDING DISCOVERY DISPUTE**<br><br>[ECF 34-35] |

## I.     INTRODUCTION

Pursuant to the Court's order, (Doc. 33), the parties filed a Joint Statement addressing their positions regarding the Plaintiff taking additional Rule 30(b)(6) depositions. (*See* Doc. 34).  As part of this briefing, the Court ordered the parties to meet and confer to identify the topics Plaintiff sought to have the deponents address. (Doc. 33 at 1-2).  From a review of the Joint Statement as well as the attached exhibits and Declaration, the parties did not meet and confer in order to narrow the topics in dispute.[1]  According to the Defendants, the parties agreed that Defendants would produce 30(b)(6) witnesses to testify about each Defendants' general knowledge of the Subject Vehicle's

---

[1] As regards the topics identified, the Court refers to the deposition topics for which Plaintiff seeks this additional discovery.

service and repair history and the service bulletins (SIBs) that are applicable to the Subject Vehicle.  Further, Defendants claim that Plaintiff never raised any objections to these limitations. (Doc. 35 at 2-3).[2]  Plaintiff has not identified the specific noticed deposition topics that are the subject of this discovery dispute, nor has she addressed Defendants' contention about the agreed upon limitations.

Plaintiff contends that the deposed 30(b)(6) witnesses did not provide essential information related to Defendants' defense and to Defendants' willful failure to repurchase Plaintiff's vehicle.  (Doc. 34 at 2).  The Court will therefore determine if the Defendants' 30(b)(6) witnesses could not provide adequate responses to Plaintiff's questions regarding relevant topics thereby necessitating additional 30(b)(6) witness testimony.  The Plaintiff's dispute concerns only the adequacy of the 30(b)(6) witnesses' testimony given Plaintiff's questions.  It does not otherwise regard reopening fact discovery to call fact witnesses.[3]

## II.    LEGAL STANDARDS

### A.    Relevance

The test for relevant evidence is defined in Federal Rule of Evidence 401 which provides: "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

"A plaintiff pursuing an action under the Song–Beverly Act has the burden to prove the following elements: (1) the product had a defect or nonconformity covered by

---

[2] Defendants admit the parties did not meet and confer about these limitations. (Doc. 35 at 3). Defendants refer to meet and confer emails exchanged on 7/27/2020, which are two days before the Court's order. (*Id.* at 4). Further, they do not address the meet and confer requirements in the Court's order.

[3] The Plaintiff's conclusion limits her requests to 30(b)(6) witnesses.  (Doc. 34 at 10 ("Therefore it is Plaintiff's position that Defendant could now provide their part and produce the above witnesses under this rule [30(b)(6)] regarding the topics covered above.")).

the express warranty; (2) the product was presented to an authorized representative of the manufacturer for repair; and (3) the manufacturer or its representative did not repair the defect or nonconformity after a reasonable number of repair attempts." *Gonzalez v. Drew Indus. Inc.*, 750 F. Supp. 2d 1061, 1073 (C.D. Cal. 2007) (citing *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 798 (2006)). "A consumer who establishes a manufacturer's failure to comply with the Song-Beverly Act may recover damages and, if the buyer proves the violation was willful, the judgment may include a civil penalty not to exceed two times the amount of actual damages." *Zargarian v. BMW of N. Am., LLC*, Case No. CV 18-4857-RSWL (PLAx), 2019 WL 6111732, at *2 (C.D. Cal. Sept. 23, 2019) (citing Cal. Civ. Code § 1794(c) and *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 121 (1995)). "A failure to replace or refund the cost of the vehicle is not willful if the manufacturer, distributor, or retailer reasonably and in good faith believed the facts did not call for a refund or replacement." *Id.* (citing *Kwan v. Mercedes-Benz of N. Am., Inc.*, 23 Cal. App. 4th 174, 185-86 (1994)). "Thus, an action is not willful where the manufacturer reasonably believed the product conformed to the warranty, or a reasonable number of repairs had not been made, or the buyer desired further repair rather than replacement or refund." *Id.* (citing *Kwan*, 23 Cal. App. 4th at 185).

"A plaintiff suing for fraudulent concealment under California law must show that the defendant intentionally failed to disclose facts that were known only to it and which the plaintiff could not have discovered; the defendant intended to deceive the plaintiff by concealing the facts; had the omitted information been disclosed, the plaintiff reasonably would have behaved differently; the plaintiff was harmed; and the defendant's concealment was a substantial factor in causing such harm." *Id.* at *3 (citing *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996), Cal. Civ. Code § 1710, and Cal. Civil Jury Instruction (CACI) 1901).

### B.      Proportionality

A party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).  Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Information need not be admissible in evidence to be discoverable. *Id.*  However, a court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

The Advisory Committee emphasized that in adding the proportionality language to Rule 26(b)(1) "the objective is to guard against redundant or disproportionate discovery" and "to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26, advisory committee note, 2015 amendments.

### C.      Rule 30(b)(6)

"Rule 30(b)(6) requires a party to describe with reasonable particularity the matters for examination by a corporate representative." *NEPIA v. Tesoro Ref. & Mktg. Co.*, No. CV 13-956 BRO (MRWx), 2014 WL 12567786, at *3 (C.D. Cal. Feb. 13, 2014) (citations omitted).  The corporation "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the requesting party] and to prepare those persons in order that they can answer fully, completely, and unevasively, the questions posed . . . as to the relevant subject matters." *Mitsui & Co. v. Puerto Rico Water Res. Auth.*, 93 F.R.D. 62, 67 (D. P.R. 1981). "Simply because

4

[defendant's] witness could not answer every question posed to him does not equate to the fact that [defendant] did not satisfy its obligation to prepare its 30(b)(6) witness." *Costa v. Cnty. of Burlington*, 254 F.R.D. 187, 190 (D. N.J. 2008).

The Rule does not expressly require the designee to personally review all information available to the corporation. So long as the designee is prepared to provide binding answers under oath, then the corporation may prepare the designee in whatever way it deems appropriate—as long as someone acting for the corporation reviews the available documents and information. *Reichhold, Inc. v. U.S. Metals Refin. Co.*, Civ. No. 03-453 (DRD), 2007 WL 1428559, at *8 (D. N.J. May 10, 2007) (the Rule "does not require that the corporate designee personally conduct interviews," but, instead, requires him to testify to matters known or reasonably available to the corporation).

## III.   ANALYSIS

### A.   Sufficiency of Defendants' 30(b)(6) Witnesses

#### 1.   Mr. Luker's Testimony About the Subject Vehicle's Repairs

According to the Plaintiff, Daniel Luker, assistant service manager for BMW of El Cajon, did not have information about the repairs to the Subject Vehicle and did not have personal knowledge of these repairs. Further, he could not answer specific questions regarding the diagnosis of the problems with the vehicle. (Doc. 34 at 4). The Plaintiff refers to selected pages of Mr. Luker's deposition transcript which are highlighted in yellow to support her argument. (*Id.* at 73-78).

The Court has reviewed the selected pages of his deposition transcript regarding whether Mr. Luker was asked questions about these topics to which he could not give an adequate response. For example, she asked Mr. Luker if he had spoken to Jose Diaz, to which he responded in the negative. (*Id.* at 73). Although he also responded that he was not personally involved in the repairs, there were no follow-up questions regarding those repairs to which Mr. Luker was unable to respond. Lastly, Plaintiff, referring to an exhibit, asked him who was corresponding with technical at BMW regarding the repairs

to the Subject Vehicle.  Mr. Luker could not read the names on the exhibit because they were redacted.

In sum, none of the selected parts of his deposition show questions about the above cited topics to which Mr. Luker did not adequately respond.  Plaintiff has presented no portions of his deposition in which he could not answer questions about the repairs, nor specific questions about the diagnosis.  Plaintiff therefore fails to show Mr. Luker was an inadequate 30(b)(6) witness.

The Defendants responded that Mr. Luker, the Assistant Service Manager who has been with the company for 18 years, reviewed hundreds of records related to the Subject Vehicle in preparation for the deposition. (*Id.* at 13).  During his 6-hour deposition he provided complete, knowledgeable and binding answers on behalf of the dealer about multiple topics, including maintenance and repairs that the dealer performed.  (*Id.*)  The Defendants also attached portions of his deposition in support of their contention.  (*See* Doc. 35-3 at 2-10).  Having reviewed these portions of Mr. Luker's deposition, the Court finds he testified knowingly and completely about the Subject Vehicle repairs sufficient to bind the corporation.  (*See id.* (highlighted sentences)).

As noted, Rule 30(b)(6) does not expressly require the designee to personally review all information available to the corporation. So long as the designee is prepared to provide binding answers under oath, then the corporation may prepare the designee in whatever way it deems appropriate "as long as someone acting for the corporation reviews the available documents and information." *Reichhold*, 2007 WL 1428559, at *9 (D. N.J. May 10, 2007) (the rule "does not require that the corporate designee personally conduct interviews," but, instead, requires him to testify to matters known or reasonably available to the corporation).

Any additional testimony from the technician(s) who did the repairs would be duplicative and not proportional to the 30(b)(6) issues given not only the testimony given by Mr. Luker, but also the extensive documentary discovery given to Plaintiff regarding the Subject Vehicle.  (*See* Doc. 34 at 12).  Further, to the extent Plaintiff wants to depose

further witnesses about their personal knowledge of the repairs and diagnosis, Plaintiff seeks their testimony as fact witnesses,[4] for which she had ample opportunity during discovery to depose them.  *See* Fed. R. Civ. P. 26(b)(2)(C).

### 2.    30(b)(6) Witness Grijalva

#### a)    SIB 01-14-17

Plaintiff alleges that the witness[5] had no knowledge regarding: the technical service bulletin regarding the fuel pump and its previous versions; when BMW became aware of the recurrent fuel pump failure; or the effectiveness of the bulletin to repair the vehicle. (Doc. 34 at 4).  Plaintiff refers to that bulletin being SIB 01 14 17, (*Id.* at 5), but fails to detail the contents of that SIB for which the witness had no knowledge.  In support of these allegations, Plaintiff refers to highlighted and selected portions of Mr. Grijalva's testimony. (*Id.* at 44-56).

According to the Defendants, they agreed to produce 30(b)(6) witnesses to testify about SIBs that are applicable to the Subject Vehicle. (*Id.* at 12).  Defendants describe the SIB at issue as being the extended component warranty for the high-pressure fuel pump. (*Id.* at 17).  They also have attached selected portions of the witness' deposition to support their position that Mr. Grijalva, during his nearly 7-hour deposition, provided complete, knowledgeable and binding answers regarding the Subject Vehicle's maintenance and repair presentations, the SIBs applicable to it, and BMW NA's denial of the repurchase request. (*Id.* at 13).

---

[4] In *Zargarian v. BMW*, the plaintiff wanted to depose a senior product engineer about his personal involvement and knowledge of BMW's internal analysis, investigation, and implementation of repairs to the defective N63 engine.  2019 WL 6111732, at *1.  Plaintiff alleged the witness was a percipient fact witness, not a 30(b)(6) witness.  *Id.* at *3.  The court agreed but limited the topics to the witness' personal knowledge relating to the defects in the N63 engine as reflected in Plaintiff's exhibits.  *Id.* at *3-4.

[5] Although Plaintiff does not identify the witness by name, the Court concludes Plaintiff is referring to Mr. Grijalva since he was deposed on the SIB in issue.

The Court reviews the Plaintiff's selected portions of Mr. Grijalva's testimony to determine if he was questioned about these three topics and whether he satisfactorily answered the questions put to him.[6]  As regards his knowledge of the SIB and its previous versions, Mr. Grijalva was questioned about the SIB and answered fully those questions, even referring to the actual SIB which was an exhibit to the deposition. (Doc. 34 at 54-56).[7]  He was asked about the copies of the prior versions of the SIB, which Plaintiff referred to as a document request.  Both parties agreed it was a discovery issue and moved on. (*Id.* at 56).[8]

Regarding when BMW became aware of the recurrent fuel pump failure, Plaintiff never asked him this question.  The only somewhat related question asked was whether the January 14, 2017 SIB was the original issue of the SIB.  Mr. Grijalva said he'd have to research that. (*Id.*)  The Plaintiff claims that the original issue date of the SIB is relevant to the issue of willfulness.  She alleges that the 2015 BMW x5 suffers from a defect that is associated with other BMW x5s, and if BMW has known of this defect for a long time and did not have a permanent repair for it, it tends to prove they failed to promptly repurchase it. (Doc. 34 at 4-5).

Defendants' portion of the transcript of Mr. Grijalva shows he testified that the SIB was active on November 7, 2017 and updated in August 2018 and again in June 2019. (Doc. 35-4 at 14).  The Court finds the witness adequately answered the question.

---

[6] Plaintiff, although providing selected portions his testimony, did not identify which questions the witness did not have knowledge to answer as asserted by the Plaintiff.
[7] Mr. Grijalva testified that he had reviewed the SIBs that were applicable to the Subject Vehicle and understood what a SIB is. (Doc. 35-4 at 7).
[8] Regarding copies of prior versions of the SIB, Defendants proffer that they apply to 2014 model year vehicles.  They further point out that Plaintiff's deposition topic regarding SIBs pertains to those that relate to the Subject Vehicle. (Doc. 34 at 18).  This request for copies is a document request for which the Court ordered Plaintiff to address its compliance with Rule 34(b), which she did not.  Notwithstanding her failure to comply, the Defendants have agreed to provide the prior versions. (*Id.*).

Further, since prior versions of this SIB are not relevant to the Subject Vehicle, the question is not relevant to the extent "original date" referred to these prior versions. Further, Plaintiff knows that the SIB was issued January 14, 2017, circulated in 2017 to 2019 with updates, and was applicable to the Subject Vehicle in March 2019. The Court finds the issue of the original date of the 2015 SIB has minimal to no relevance and would otherwise be available through the Plaintiff's document requests.

As regards the effectiveness of the SIB to repair the vehicle, Plaintiff did not ask Mr. Grijalva any questions the Court can discern from Plaintiff's deposition exhibit. The SIB dealt with notice of an extended warranty on the high-pressure fuel pump. Even if she had asked such a question, it would be ambiguous. And the Plaintiff has failed to explain how this extended warranty can be effective to the repair to her vehicle. Therefore, the Court also finds that Plaintiff has not met her burden of establishing relevance of this inquiry nor how it would be proportional to this case. Further, whether the repair was effective is more appropriately directed to expert testimony and otherwise does not involve the extended warranty.

Plaintiff requests another 30(b)(6) witness to testify about SIB 01-14-17 because Mr. Grijalva could not answer specific questions regarding the SIB. (*See* Doc. 34 at 9-10). Plaintiff refers to Exhibits 1 and 3, which are the deposition notices. However, Plaintiff does not identify in Mr. Grijalva's deposition what other specific questions he could not answer. The Court has already ruled on the portions of the deposition Plaintiff raised as a "no knowledge" issue. Therefore, the Court denies this request because Plaintiff has failed to identify any relevant questions concerning the SIB Mr. Grijalva could not answer.[9]

---

[9] Plaintiff was ordered to address the topics in dispute after a meet and confer with Defendants. She did neither. The Court reviewed the transcripts presented and has addressed the responses to questions by the Plaintiff. To the Court, her request appears to concern questions she didn't ask Mr. Grijalva when she had a chance. Now, after the fact,

### b)   Michael Piatkowski Email

Plaintiff claims that Mr. Grijalva was not able to testify regarding the circumstances of a statement made by Michael Piatkowski in the TSARA report. (Doc. 34 at 4).  She refers to his deposition at page 6 in support of her contention.

According to this page of the deposition transcript, referring to an email written by Mike Piatkowski, Mr. Grijalva was asked why Mike Piatkowski was collecting more information on these repeat fuel system failure vehicles. (Doc. 34 at 49).  Mr. Grijalva responded that he was asking about fuel stations, what kind of fuels are being used. (*Id.*)  The Plaintiff repeated the question asking what he is talking about when he says he's collecting more information on these repeat fuel system failure vehicles. (*Id.* at 50).  Mr. Grijalva responds based on his reading of the email that he is collecting data to find out what type of fuel is being used. (*Id.*)  Plaintiff followed up asking whether fuel was causing the failure of the fuel pump in these vehicles. (*Id.*)

From the Court's reading of this colloquy, the witness adequately answered the questions about Mr. Piatkowski's email.  The Court deduces that Plaintiff is claiming Mr. Grijalva was not able to adequately answer regarding whether the fuel-type data Mr. Piatkowski was collecting lead him to conclude that the fuel type used in the Subject Vehicle caused the repeat failures in the subject vehicle.  Such testimony from Mr. Piatkowski would necessarily involve his personal knowledge stemming from his involvement in collecting fuel-type data.  The Plaintiff's request to depose him on this subject would involve him as a percipient witness, not as a 30(b)(6) witness. *Zargarian,* 2019 WL 6111732, at *4.

The Court also notes Plaintiff never asked Mr. Grijalva whether Mr. Piatkowski's data lead him to conclude that Plaintiff's use of fuel caused the malfunction of the fuel pump. In any event, Mr. Grijalva was questioned about Plaintiff using the wrong fuel as a

---

she wants to re-open the questioning.  The Plaintiff only gets one bite of the apple. Any additional questions she failed to ask are waived.

cause of the defect.  He was asked whether BMW of El Cajon informed him of any kind of customer abuse or neglect.  For example, was she using improper gasoline?  He stated no analysis of the fuel was performed. (*Id.* at 12).  Further, Mr. Grijalva indicated abuse or neglect would be found on the repair orders.  He responded there was nothing documented as regards the 2017 repair. (Doc. 35-4 at 8).   The Court finds Mr. Grijalva adequately answered questions about this topic to bind the corporation.  As to the more general question about whether fuel was causing the failure of the fuel pump in the Subject Vehicle, that is the subject of an expert opinion.

### B.    Additional 30(b)(6) Witnesses

#### 1.    Jose Diaz

Plaintiff wants to call Jose Diaz as a 30(b)(6) witness to testify because he was personally involved in the first fuel pump replacement in November 2017. (Doc 34 at 6). She reasserts her previous allegation (*Id.* at 4) that Mr. Luker was not personally involved in these repairs, was not able to answer specific questions regarding the fuel pump repairs, the reasons the repairs were performed and specific correspondence with the manufacturer, BMW of NA, regarding the fuel-pump repair. (*Id.* at 6).  Plaintiff does not identify in the deposition transcript of Mr. Luker where she asked him these sorts of questions and how he was unable to answer them.  Notwithstanding, the Court adopts its ruling in Section III.A above on this point since the issues are the same.

From her Joint Statement, Plaintiff appears to want to call Mr. Diaz to testify about topics that were not raised by Plaintiff during the depositions of Defendants' two 30(b)(6) witnesses.  Specifically, she wants to ask Mr. Diaz questions such as whether or not Defendant had knowledge of the fuel pump failures in vehicles of the same year, make and model. (Doc. 34 at 6).  Plaintiff has not identified which deposition topics cover this area of inquiry, which the Court ordered Plaintiff to do as part of this discovery dispute. Additionally, she does not establish where, in either of the two 30(b)(6) witnesses' depositions, they were asked questions on the topic of other like vehicles. She also fails to establish how Mr. Diaz, the technician who repaired the subject vehicle in 2017, would

11

possess such knowledge.  In this regard the Court can only assume that she wants to call Mr. Diaz to question him about his personal knowledge, which would be as a fact witness, not a 30(b)(6) witness.  (*See* Section III.A).  Plaintiff's own argument supports this conclusion, "Jose Diaz, as the technician that performed the material repairs on the vehicle, will have this personal knowledge, and can attest to the best of his recollection if he believes it was repaired."  (*Id.* at 6).

Plaintiff also contends that Defendants' 30(b)(6) witnesses lacked information about the correspondence Mr. Diaz had regarding repairs to the Subject Vehicle and BMW of NA. (*Id.* at 7).  The Plaintiff fails to show where she asked either witness about such correspondence, which is her burden in this discovery dispute.  The Court has reviewed Plaintiff's selected portions of the depositions of both 30(b)(6) witnesses and concludes that Plaintiff never questioned either witness about such correspondence.  Therefore, she fails to show how "Defendant witness was not able to provide evidence on these matters." (Doc. 34 at 7).[10]  For these reasons, Plaintiff's request to have Mr. Diaz testify as a 30(b)(6) witness is denied.

## 2.    Same Defect in Other Like Vehicles

Notwithstanding the Court's above ruling, the Court will address the issue raised by Plaintiff in her Joint Statement.  The Plaintiff is seeking further 30(b)(6) witness(es) to address whether the same alleged high-pressure fuel pump defect existed in the same year, make and model as Plaintiff's vehicle.  She claims that the 2015 BMW x5 suffers from a defect associated with other BMW x5s. (Doc. 34 at 5).  She further states that from her own research, it seems BMW had knowledge of the fuel pump failure defect in vehicles of the same year, make and model as the Subject Vehicle. (*Id.* at 6).  The relevance of this information, according to Plaintiff, is it will help her determine whether there was knowledge of a wide-spread problem with the fuel pump.  This in turn will help

---

[10] In any event, her wish to call Mr. Diaz about the correspondence he received from BMW would involve him testifying as a fact witness.

show BMW's willful failure to repurchase the vehicle because it knew there were not permanent repairs for the vehicle. (*Id.*)[11]

The Defendants object to this discovery, arguing other-vehicle discovery is not relevant. They argue Plaintiff's Song-Beverly Act claim is entirely unrelated to issues with other vehicles and instead relates to whether the alleged nonconformities in the Subject Vehicle were covered under warranty and repaired within a reasonable number of repair attempts. *See Gonzalez*, 750 F. Supp. 2d at 1073. (Doc. 34 at 19).[12]

The Court reviewed Plaintiff's noticed deposition topics for the 30(b)(6) witness(es) to determine whether such area of inquiry was properly noticed. Topic 6 appears to be applicable to this issue.

> 6. Questions regarding the nature of the DEFECTS, including the cause of the DEFECTS in BMW VEHICLES, all available fixes that have been made available to your authorized dealers to date, and the subsequent results of such fixes;

(Doc. 34 at 29).

Plaintiff narrowed BMW VEHICLES to include only those of the same make, model and year as the subject vehicle. (*Id.* at 27). She defines "DEFECTS" as follows:

---

[11] Plaintiff has not provided this research to support her discovery request. Further, since Plaintiff has such discovery already, her request may be cumulative.

[12] Defendants also contend that BMW NA denied her repurchase request because the fuel pump-related repairs occurred after the expiration of the New Vehicle Limited Warranty ("NVLW"). Therefore, since the rationale for the denial is unrelated to the nature of the fuel pump repairs, fuel issues related to other vehicles have no bearing on BMW NA's decision to deny Plaintiff's repurchase request. (Doc. 34 at 20).
The Court has reviewed the selected portions of the deposition transcript of Mr. Grijalva, the customer support engineer whose job is to evaluate warranty claims. (Doc. 35-4 at 4). Mr. Grijalva provided extensive testimony that the fuel pump replacements were not covered under the NVLW, rather it was covered under Plaintiff's 7/70 emissions warranty. (*Id.* at 8-12, 16-17). Neither party has addressed whether coverage under this 7/70 emissions warranty satisfies the express warranty requirement of the Song-Beverly Act. This issue is not before this Court and will not be addressed.

"The term 'DEFECT(S)' shall refer to problems that manifest in the vehicle becoming non-operational while driving on public roads; broken and failing fuel system; defective fuel pump, fuel delivery unit, fuel injectors, fuel lines and fuel tank requiring replacement; fuel pump failure, or any other similar concern identified in the repair history for the SUBJECT VEHICLE." (*Id.*)

Rule 30(b)(6) requires the Plaintiff to "describe with reasonable particularity the matters for examination" by a corporate representative. *NEPIA*, 2014 WL 12567786, at *3. First, the Court finds Plaintiff's topic request 6 is facially overbroad. The alleged defect at issue has to be a qualifying one under the Song-Beverly Act. Plaintiff fails to specify which is the qualifying defect under the Song-Beverly Act. *See e.g. Koeper v. BMW of N. Am., LLC*, Case No. CV 17-6154-VAP (JPRx), 2018 WL 6016915, at *2 (C.D. Cal. May 21, 2018) ("'engine defects' . . . is hopelessly broad and would cover nearly any engine problem"); *Putman v BMW of N. Am.*, Case No. CV-17-3485-JAK (KSx), 2018 WL 6137160, at *4 (finding "'engine defect' . . . vastly overbroad and fail[s][s to meet Rule 34's requirement of particularity"); *Jensen v. BMW of N. Am.*, 328 F.R.D. 557, 563-65 (S.D. Cal. 2019) (topics and RFPs are too broad).

Second, the relevance of same defects in other same BMW vehicles goes to the issue of willfulness under the Song-Beverly Act. The relevancy of the same nonconformities in other like vehicles goes to notice to the defendant that, given a fundamental defect in the same model vehicles as the subject vehicle, the repairs did not fix the vehicle. *Kooner v. BMW of N. Am., LLC*, Case No. 17CV1940 W (BGS), 2018 WL 3956021, at *3 (S.D. Cal. Aug. 17, 2018). The cause of the defect is not relevant to this issue. *See e.g., Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1102, n.8 (2001) (a consumer does not have to identify, for example, "the source of the leak"); *Donlen v. Ford Motor Co.*, 217 Cal. App. 4th 138, 149-152 (2013) ("the plaintiff is not obligated to identify or prove the cause of the car's defect. Rather, he is required only to prove the car did not conform to the express warranty."); CACI No. 3201. Further, Topic No. 6's request regarding the cause and all available fixes is overly burdensome and not

proportional to the needs of the case.  For these reasons Topic 6 does not satisfy the particularity requirement for a 30(b)(6) and is otherwise facially overbroad.

Notwithstanding, the Court *sua sponte* narrows Topic 6 to include 30(b)(6) testimony about other BMW vehicles of the same make, model and year that suffered from repairs to the high-pressure fuel pump described in SIB 01-14-17. (Doc. 35-5 at 2).

The basic relevancy premise for a civil penalty is whether there was information known to the defendant regarding the existence of the same fundamental defect(s) which were present in other like vehicles such that a jury could reasonably infer that the defendant's repairs did not resolve the defect, and therefore it was unreasonable for a defendant to have not repurchased the vehicle.  *Kooner*, 2018 WL 6137160, at *3 (S.D. Cal. Aug. 17, 2018).

Plaintiff wants to depose additional 30(b)(6) witnesses about their knowledge of a widespread problem with the fuel pump.  However, she does not specify from where such knowledge would derive.  For example, Mr. Grijalva was asked at his deposition whether or not 2015 BMW x5s are suffering from repeat fuel system failures.  He responded that he did not have any data to rely on as far as numbers or anything. (Doc. 34 at 51).[13]

Although Plaintiff has not raised any dispute about her Demand to Produce Documents at the Deposition, the Court has reviewed the same. In Paragraph 19 Plaintiff requested,

> Please produce all documents, records and data, including electronically stored information (including electronic data and e-mails), concerning customer complaints, claims, reported failures, and warranty claims related to the DEFECTS, including any databases in YOUR possession with information from dealers, service departments, parts departments, or warranty departments, and all documents concerning YOUR response to each complaint, claim, or reported failure.

---

[13] Plaintiff never followed up with additional question(s).  The Court finds Mr. Grijalva satisfactorily answered the question.

1   (Doc. 34 at 39).

2        From this document request it is clear the Plaintiff expects an additional 30(b)(6)

3   witness to have knowledge derived from such databases, which in effect would result in

4   her seeking the discovery requested in RFP 19.  In that she never moved the Court to

5   address any dispute concerning RFP 19, any attempt to obtain such information from the

6   30(b)(6) witness is denied.   Plaintiff has ample opportunity to obtain this discovery but

7   chose not to. *See* Fed. R. Civ. P. 26(b)(2)(C)(ii).

8        Assuming RFP 19 was properly raised in this discovery dispute, she has not

9   identified the databases, nor addressed the relevance of the data contained therein and

10  whether it meets Rule 26's proportionality factors. (Doc. 33 at 2, n.2).  Nonetheless, this

11  Court and other courts have addressed similar if not the exact requests for production at

12  issue in Plaintiff's No. 19 requests.  In *Jurosky v. BMW of North America*, the plaintiff

13  sought such discovery from BMW's databases.  Case No. 19CV706 JM (BGS), No. 48 at

14  7-15 (S.D. Cal. April 9, 2020).  These databases were described as follows:

15        For purposes of establishing relevance of other vehicle data, it is
16        important to note what the various databases and email accounts show.
          Information from the Warranty database represents information
17        provided by BMW dealers, to BMW, every time a consumer makes a
          claim or is otherwise granted service under a BMW warranty, *i.e.*, the
18        same type of information typically found on customer repair orders.
          Information from the CR database represents information that is
19        collected by BMW when consumers report complaints about their
          vehicles directly to BMW and BMW's response to those complaints.
20        Information from the PuMA database represents information provided
          by dealers, to BMW, when BMW dealers are encountering "difficult-
21        to-diagnose technical problems," (Tabesh Decl. Ex. F) so that BMW
22        may document the problem, investigate further, and/or provide
          assistance
23

24

25  *Id.* at 7.

26        In *Jurosky* this Court initially found the requested information as narrowed by the

27  Court could be relevant under Rule 401 to prove defendant's knowledge that the repairs

28  did not resolve defect.  *Id.* at 9-10.  The Court then applied the proportionality factors

listed in the 2015 Amendments to Rule 26(b)(1) and (b)(2)(C) and denied Plaintiff's discovery requests as being overburdensome, duplicative, disproportionate to the needs of the case. *Id.* at 11-15.  *See e.g. Putman*, 2018 WL 6137160, at *4 (Court denied the requests based on facial overbreadth and lack of proportionality); *Koeper*, 2018 WL 6016915, at *1-2 (Denying overbroad requests as not being proportional).

Since Request for Documents No. 19 is not part of this discovery dispute, for the 30(b)(6) witness to address questions about customer complaints, warranty claims, information from dealers and service departments etc., the witness would have to access these databases to be responsive to the question about whether 2015 BMW x5s are suffering from repeat fuel system failures.  This in effect would be an end run around her failure to move this Court to enforce RFP No. 19. In addition, the Court finds calling an additional 30(b)(6) witness to testify about this data to be disproportionate to the needs of the case and overly burdensome.

For these reasons Plaintiff's request to call additional 30(b)(6) witness(es) to provide testimony about fuel pump defects in other like vehicles is denied.

### 3.    Gary Hartman

Plaintiff wants to depose Gary Hartman, a BMW of El Cajon technician, who was involved in the second replacement of the fuel pump in May 2019.  (Doc. 34 at 7). Specifically, she wants to question him about a repair in which he was involved.  This repair notes that there was "metal in the fuel system due to high pressure fuel pump failure." (*Id.*)  She claims further information regarding this repair finding could help clarify the cause of the defect. (*Id.*)

Plaintiff fails to identify the repair she is referring to or where her quote came from.  She also has not directed the Court to where she questioned the witness about this repair and whether the witness was able to respond adequately to bind the corporation. None of the deposition transcripts speak to this repair issue.

Besides failing to establish that the Defendants' witness did not answer questions on this topic, Plaintiff's desire to depose the witness regarding his personal knowledge

17

about a repair is a topic for Mr. Hartman as a fact and quasi expert witness. (*See* III.A). As such this request is denied.

She also wants to depose Mr. Hartman about the TSARA case which she claims was made by Mr. Hartman and dealt with the fuel system failure in the subject vehicle. (Doc. 34 at 8). She claims the TSARA case report addresses possible causes of the defect, such as gasoline that Plaintiff used. (*Id.*). Again, she fails to address where Plaintiff questioned the 30(b)(6) witnesses about this topic in that report or how those witnesses were unable to give complete answers to bind the corporation. The Court, on its own, reviewed both witnesses' testimony to determine if Plaintiff preserved this issue, and whether the Defendants' witness(es) fully answered her questions.

Mr. Luker was asked what is a TSARA report, to which he responded, "It's the same principle or same thing as PuMA. They call it TSARA now. …." (*Id.* at 77). The witness was able to satisfactorily answer Plaintiff's question. She has not offered other parts of his deposition in which he was not able to respond to questions about that report.

As regards Mr. Grijalva, the Plaintiff identifies an email from Mike Piatkowsi which is included in the TSARA report. (Doc. 34 at 49-50). The Defendants' portions of Mr. Grijalva's testimony show that Plaintiff questioned him extensively about the TSARA report. The witness was asked how BMW was contacted about the high-pressure fuel pump repair. He responded that a TSARA case was submitted. (Doc. 35-4 at 11). From the transcript the witness was questioned by the Plaintiff thoroughly about various portions of the TSARA report. (*Id.* at 11-12). The transcript shows that Mr. Grijalva answered all the questions completely and to the satisfaction of Plaintiff. The only question the Court identifies wherein the Plaintiff asked Mr. Grijalva about Gary Hartman was whether he contacted Mr. Hartman regarding Plaintiff's repurchase request, to which he responded in the negative. (*Id.* at 11).

Plaintiff claims Mr. Hartman's testimony is relevant to counter the defense that Plaintiff's lack of maintenance, *i.e.*, putting in the wrong fuel, caused the fuel system failure. (Doc. 34 at 8). As previously noted in Section III.A.2.b), Mr. Grijalva was

18

questioned about Plaintiff using the wrong fuel as a cause of the defect.  He was asked whether BMW of El Cajon informed him of any kind of customer abuse or neglect.  For example, was she using improper gasoline?  He stated no analysis of the fuel was performed. (Doc. 35-4 at 12).  Further, Mr. Grijalva indicated abuse or neglect would be found on the repair orders.  He responded there was nothing documented as to the 2017 repair. (*Id.* at 8).[14]  The Court finds that Mr. Grijalva has adequately bound BMW on this issue.  Notwithstanding, Mr. Hartman's testimony about the possible causes of the defect in the Subject Vehicle relates to fact and expert witness testimony.

The Plaintiff also states that the TSARA report also mentioned repeated fuel system failures in vehicles of the same model as the subject vehicle. (*Id.*)  She does not specify where in the report this is mentioned.  Nor does she specify where she questioned Mr. Grijalva about this topic, and whether or not he was able to answer her questions. The Court, having reviewed Mr. Grijalva's testimony about the TSARA report, notes that he was asked about a statement made by Mike (Piatkowski) that "we are collecting more information on these repeat fuel system failures." (Doc. 35-4 at 12).  Mr. Grijalva was then asked why was Piatkowski collecting this information.  He responded that they were collecting data to find out what type of fuel was being used. (*Id.*)  Plaintiff then asked him if fuel was causing the failure of the fuel pumps in these vehicles. The Defendants objected in that it called for an expert opinion.  Mr. Grijalva did not have an answer for that question. (*Id.*)

The Court finds Mr. Grijalva answered completely Plaintiff's questions above. The question about fuel being the cause of fuel system failures in other vehicles calls for an expert opinion.[15]  Additional testimony from Mr. Hartman is not warranted.

---

[14] Plaintiff has received this discovery so any further testimony would be cumulative.  In any event, Mr. Grijalva satisfactorily answered Plaintiff's questions.

[15] Plaintiff contends that repeated fuel system failures in vehicles of the same model as the Subject Vehicle is salient to her civil penalty and fraud claims. (Doc. 34 at 8).  This issue has been addressed in Section III.B.  It also appears she wants to question him about

### 4.   Mike Piatkowski

Plaintiff wants to depose Mr. Piatkowski about a statement he made in the TSARA report regarding Plaintiff's vehicle.  This statement was an email attributed to Mr. Piatkowski which has already been addressed in Section III.A.2.b).

Plaintiff further claims that his involvement in the TSARA report included the second repair to the fuel pump.  She alleges Mr. Piatkowski also was involved with advising the repair facility, BMW of El Cajon, regarding the repairs to the fuel pump defect.  She claims his expertise can help show BMW of NA's alleged knowledge of the defect, and the steps taken to repair the defect. (Doc. 34 at 9).

Plaintiff has again failed to establish that she questioned the 30(b)(6) witnesses on these topics and has not shown how those witnesses were unable to answer those questions fully as required under Rule 30(b)(6).  A review of the deposition transcripts submitted reveals that she either did not question the witnesses, and if she did, they answered her questions fully.  Finally, Mr. Piatkowski's involvement in the second repair of the fuel pump involves his testifying as a fact witness.  The Court denies this basis for the same reasons the Court denied the testimony of Jose Diaz.  (*See* Section III.A.)  His knowledge of the defect from his involvement in the repairs to the Subject Vehicle either involves him being called as a fact witness or to give his expert opinion as to the cause of the defect.  As such the Court denies additional testimony on this basis.[16]

_____

the differences between the first repair and the second repair, why the first repair failed, and the prevalence of the defect. (*Id.*). This inquiry involves Mr. Hartman as a fact and expert witness and is thusly outside the scope of this discovery dispute.

[16] Plaintiff also asserts that in the TSARA report BMW of NA undertook to diagnose Plaintiff's defects regarding the fuel pump failure and provided possible causes such as the gas stations used by the Plaintiff.  This topic was addressed by the Court in this Section regarding Mr. Hartman's testimony.  (*See* Section III.B.3).

### C.     Fraud Claims

"A plaintiff suing for fraudulent concealment under California law must show that the defendant intentionally failed to disclose facts that were known only to it and which the plaintiff could not have discovered; the defendant intended to deceive the plaintiff by concealing the facts; had the omitted information been disclosed, the plaintiff reasonably would have behaved differently; the plaintiff was harmed; and the defendant's concealment was a substantial factor in causing such harm." *Zargarian*, 2019 WL 6111732, at *3 (citing *Lazar*, 12 Cal. 4th at 638, Cal. Civ. Code § 1710, and CACI 1901).

In the Joint Statement, the Plaintiff has not addressed how the requested 30(b)(6) witnesses are relevant and proportional to her fraud claims.  She intertwines her relevancy arguments under the Song-Beverly Act with fraud claims. (*See* Doc. 34 at 5, 9, 10).  Yet she fails to differentiate how the requested discovery is relevant to the elements of her fraud claims. (*See* Doc. 34 at 21).  Nor has she shown that she questioned the witnesses about her fraud claims and they could not answer her questions. Therefore, the Court denies her discovery requests for the same reasons articulated herein.  *See e.g. Jurosky*, Case No. 19CV706 JM (BGS), No. 48 at 13 n.9.

## IV.     CONCLUSION

For the reasons stated herein, the Plaintiff's motion for additional 30(b)(6) witnesses is **DENIED**.

**IT IS SO ORDERED.**

Dated:  October 5, 2020

Hon. Bernard G. Skomal
United States Magistrate Judge