UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIYU DONG,<br><br>                  Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC; SUNROAD BCV AUTO, INC. dba BMW OF EL CAJON; and DOES 1 TO 10<br><br>                  Defendants. | Case No.: 19-cv-2202 DMS (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

This case comes before the Court on Defendants' motion for summary judgment. Plaintiff filed an opposition to the motion, and Defendants filed a reply. After reviewing the parties' briefs and the record on file in the case, the motion is granted in part and denied in part as set out below.

**I.**

**BACKGROUND**

This case arises out of Plaintiff's November 11, 2014 purchase of a 2015 BMW X5 from BMW of Santa Maria. (Defs.' Statement of Uncontroverted Facts in Supp. of Mot., No. 1.) Defendant BMW of North America ("BMWNA") provided a new vehicle limited warranty ("NVLW") with Plaintiff's purchase of the vehicle. (*Id.*) The NVLW covered defects in material workmanship for a period of 48 months or up to 50,000 miles,

whichever occurs first. (*Id.*) The vehicle also came with a 7 year/70,000 mile California Emissions Warranty and an 8 year/80,000 mile Federal Emissions Warranty. (Pl.'s Counter Statement of Undisputed Facts in Supp. of Resp. to Mot., No. 3.)

It appears Plaintiff drove the vehicle for nearly three years without any significant incidents. However, on November 4, 2017, at approximately 10:30 p.m., while Plaintiff was driving the vehicle on Friars Road in San Diego, California, it lost power. (Decl. of Siyu Dong ("Dong Decl.") ¶13.) Plaintiff eventually had the vehicle towed to Defendant BMW of El Cajon ("BMWEC") on November 7, 2017. (*Id.* ¶14.) At that time, the mileage on the vehicle was 52,609. (Decl. of Daniel Luker in Supp. of Mot. ("Luker Decl."), Ex. L.) On that same date, Plaintiff purchased an Extended Service Contract from BMW of Riverside for $4,500. (Dong Decl., Ex. 4.) Plaintiff also purchased a BMW Maintenance Program Upgrade from BMW of Riverside for $2,395. (*Id.*)

Service records from BMWEC reflect that the cause of the power failure was a defect in the high pressure fuel pump that had contaminated the fuel system. (Luker Decl., Ex. L.) The high pressure fuel pump was replaced, and that repair was covered by the Federal Emissions Warranty. (Decl. of Jose Grijalva in Supp. of Mot. ("Grijalva Decl.") ¶6.) Those repairs were completed on November 14, 2017, and Plaintiff retrieved the vehicle on that date. (Luker Decl., Ex. L; Dong Decl. ¶16.)

Nearly a year and a half later, on April 18, 2019, while Plaintiff was driving on the freeway, the vehicle lost power again. (Dong Decl. ¶21.) Plaintiff states she "was driving during rush hour and was in the outside lane. I was barely able to coast the car to the median to avoid traffic. I was terrified. This is exactly what happened the first time the car lost power." (*Id.*) Plaintiff "immediately contacted BMW through their roadside assistance button in the car." (*Id.* ¶22.) The car was then towed again to BMWEC. (*Id.*) Service records from that visit reflect there was "metal in the fuel system due to high pressure pump failure." (Luker Decl., Ex. M.) The fuel pump was replaced, and that service was covered under an Extended Parts Warranty for the high pressure fuel pump.

(Grijalva Decl. ¶10, Ex. P.[1])  Those repairs were completed on May 10, 2019, at which time Plaintiff retrieved the vehicle.  (Luker Decl., Ex. M; Dong Decl. ¶24.)

Plaintiff states that in June 2019, she contacted BMWNA because she "was concerned with [her] safety and wanted help."  (Dong Decl. ¶28.)  She also requested that BMWNA repurchase the car, which it declined to do.  (*Id.* ¶28-29; Dong Decl., Ex. 6.)  As of December 2, 2020, Plaintiff states the vehicle is in her garage and she no longer drives it because she "does not trust the car anymore."  (Dong Decl. ¶35.)  She also states she cannot, in good conscience, "sell the car to anyone else."  (*Id.* ¶36.)  She says the car currently holds no value to her, (*id.*), and the Extended Service Contract and Maintenance Program Update that she purchased are equally useless.  (*Id.* ¶37.)  She says that if she had known of the safety problems with the car, she never would have bought it.  (*Id.* ¶38.)

In light of the events described above, on October 10, 2019, Plaintiff filed the present case in San Diego Superior Court alleging five claims under California's Song-Beverly Consumer Warranty Act, one claim under the federal Magnuson-Moss Warranty Act, one claim of fraud by omission, two claims of fraud – concealment, one claim of intentional or negligent misrepresentation, one claim of negligence, one claim for violation of California Business and Professions Code § 17200, and one claim for conspiracy.  Defendant BMWNA removed the case to this Court on November 19, 2019, on the ground of federal question jurisdiction arising from the Magnuson-Moss claim.  After removal, Plaintiff filed a First Amended Complaint ("FAC") that omitted the Magnuson-Moss claim but realleged all of the other claims.

/ / /

/ / /

---

[1] The Extended Parts Warranty is reflected in a Service Information Bulletin ("SIB"), which states that for Plaintiff's vehicle, "the engine high pressure fuel pump limited warranty for defects in materials or workmanship has been extended to 10 year/120,000 mile as determined from the original in-service date."  (Grijalva Decl., Ex. P.)

# II.

# DISCUSSION

Defendants move for summary judgment on all of Plaintiff's claims. Plaintiff does not appear to oppose the motion on her negligence claim, therefore the motion is granted as to that claim. The other claims are discussed below.

## A.  Legal Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id. See also Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

/ / /

/ / /

### B. Song-Beverly Act

Plaintiff's first five claims arise under the Song-Beverly Act. "The Song–Beverly Act is a remedial statute designed to protect consumers who have purchased products covered by an express warranty." *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 798 (2006) (citing *Jensen v. BMW of North America, Inc.*, 35 Cal.App.4th 112, 121 (1995)). "One of the most significant protections afforded by the Act", and the basis for Plaintiff's claims here,

> is found at Civil Code section 1793.2, subdivision (d), which provides with respect to consumer goods that "if the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer ...."

*Id.* (quoting Cal Civ. Code § 1793.2(d)(1)).

In this case, Plaintiff alleges a number of claims under the Song-Beverly Act. The first claim alleges BMWNA failed to "service or repair" Plaintiff's vehicle "to conform to the applicable express warranties after a reasonable number of attempts," in violation of California Civil Code section 1793.2(d). The second claim alleges BMWNA failed to "service[ ] or repair[ ]" Plaintiff's vehicle "so as to conform to the applicable warranties within 30 days[ ]" in violation of California Civil Code section 1793.2(b). The third claim alleges BMWNA failed to "[m]ake available to authorized service and repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period[ ]" in violation of California Civil Code section 1793.2(a)(3). The fourth claim alleges BMWNA breached an express warranty, and the fifth claim alleges Defendants breached the implied warranty of merchantability.

To prevail on her first claim, Plaintiff must prove the following three elements: "(1) the product had a defect or nonconformity covered by the express warranty; (2) the product was presented to an authorized representative of the manufacturer for repair; and (3) the manufacturer or its representative did not repair the defect or nonconformity after a

reasonable number of repair attempts." *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 798-99 (2006) (citing *Oregel v. American Isuzu Motors, Inc.*, 90 Cal.App.4th 1094, 1101 (2001)). Defendants argue, and Plaintiff does not appear to dispute, that Defendants repaired Plaintiff's vehicle to conform to the applicable warranties. Although Plaintiff states she "no longer drive[s] the vehicle[,]" (Dong Decl. ¶35), she does not dispute the vehicle was repaired after the April 2019 incident, nor does she state she has experienced any other defects in the vehicle since that time. Absent any evidence that the vehicle has not been repaired to conform to the applicable warranties, Defendants are entitled to judgment on Plaintiff's first claim.

On the second claim, Defendants argue they are entitled to judgment because they repaired Plaintiff's vehicle within thirty days. Defendants present evidence to support this assertion, but Plaintiff argues there is evidence to the contrary. Plaintiff's evidence, however, does not support her argument. Indeed, Plaintiff's declaration reflects that the first repair was completed in seven days, (*id.* ¶15), and the second repair was completed in twenty-one days. (*Id.* ¶24.) Neither of these repairs took more than thirty days, either alone or together. Therefore, Defendants are entitled to judgment on Plaintiff's second claim.

On Plaintiff's third clam regarding literature and replacement parts, Defendants argue they are entitled to judgment because there is no evidence they failed to make those items available to their service and repair facilities. Plaintiff disputes Defendants' argument, but she fails to provide any evidence to support this claim. Accordingly, Defendants are entitled to judgment on this claim, as well.

Plaintiff's fourth claim is for breach of express warranty, and here Defendants do not explicitly argue there was no breach, but instead argue there was no warranty in effect when Plaintiff experienced the problems with her vehicle. The Song-Beverly Act defines an "express warranty" as "A written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide

compensation if there is a failure in utility or performance[.]" Cal. Civ. Code § 1791.2(a)(1). Plaintiff did not identify the warranty underlying this claim in her First Amended Complaint, but there are six possibilities: (1) the NVLW, the (2) State and (3) Federal Emissions Warranties, (4) the Extended Parts Warranty, (5) the Extended Service Contract and (6) the BMW Maintenance Program Upgrade.

Starting with the Extended Service Contract and the BMW Maintenance Program Upgrade, which Plaintiff describes as a "warranty," (Dong Decl. ¶¶8-10), the Court agrees with Defendants that neither of these contracts was an "extended warranty" under the Song-Beverly Act. *Gavaldon v. DaimlerChrysler Corp.*, 32 Cal. 4th 1246, 1250 (2004) (holding service contract is not express warranty under Song-Beverly Act). Plaintiff attempts to avoid the holding in *Gavaldon* by arguing that BMWNA advertised these agreements as warranties, (Dong Decl. ¶¶8, 10), but even if it did, the Maintenance Program Upgrade refutes those representations, (*see* Dong Decl., Ex. 4, ECF No. 38-5 at 3) (stating "This is not a warranty or insurance product"), and the Extended Service Contract nowhere includes the words "warrant" or "guarantee." *See* Cal. Civ. Code § 1791.2(b) ("It is not necessary to the creation of an express warranty that formal words such as 'warrant' or 'guarantee' be used, but if such words are used then an express warranty is created.") Thus, under the holding in *Gavaldon*, these contracts are clearly not "express warranties" under the Act.

Turning to the Extended Parts Warranty, Defendants argue it is not an "express warranty" under the Act because it did not arise out of the sale of the vehicle. In support of this argument, Defendants cite *Yi v. BMW of N. Am., LLC*, No. 2:17-CV-06467-SVW, 2018 WL 3359016 (C.D. Cal. May 24, 2018). In that case, the court found that certain extended warranties did not support the plaintiff's Song-Beverly claim because it was undisputed those warranties did not arise out of the sale of the vehicle. *Id.* at *4. Plaintiff disputes that point here, arguing the NVLW "never expired," but instead "BMWNA chose to extend its warranty." (Resp. to Mot. at 11.) However, Plaintiff's vehicle was not eligible for the Extended Parts Warranty until March 2019, at the earliest. (*See* Decl. of Jose Grijalva in Supp. of Mot. ¶¶8.) Since Plaintiff's NVLW expired sometime before

November 2017, the Extended Parts Warranty cannot be construed as a simple extension of the NVLW.  More importantly, the Extended Parts Warranty did not arise out of the sale of Plaintiff's vehicle.  Rather, it was issued for other Model Year vehicles well after Plaintiff purchased her vehicle, (*id.* ¶9), and was made applicable to Plaintiff's Model Year vehicle sometime after that. (*Id.* ¶¶8-9.)  Accordingly, the Court agrees with Defendants that the Extended Parts Warranty is not an "express warranty" under the Act.

Next is the NVLW, which Defendants do not dispute is an "express warranty" under the Song-Beverly Act.  Instead, Defendants argue this warranty had expired by the time Plaintiff experienced any problems with her vehicle, and thus it cannot serve as the basis for Plaintiff's claim.  Plaintiff disputes this warranty had expired, and argues it remained in effect with Defendants' issuance of the Extended Parts Warranty.  However, as explained above, the Extended Parts Warranty did not provide Plaintiff with uninterrupted coverage under the NVLW.  Rather, the NVLW expired in 2017, and only later in 2019 did Defendants make the Extended Parts Warranty applicable to Plaintiff's Model Year vehicle.  In light of that break in coverage, the Court agrees with Defendants that the NVLW had expired by the time Plaintiff experienced any problems with her vehicle.  Thus, to the extent Plaintiff's breach of express warranty claim is based on the NVLW, Defendants are entitled to judgment on that claim, as well.

The only remaining warranties that could serve as the basis for Plaintiff's breach of express warranty claim are the Emissions Warranties, and on those Warranties, Defendants argue they are not "express warranties" under Song-Beverly because Defendants did not "undertake" to provide them.  Specifically, Defendants interpret "undertakes," as used in the statute, to mean the manufacturer "must *voluntarily* provide a warranty in order for that warranty to fall within the purview of Song-Beverly." (Mem. of P. & A. in Supp. of Mot. at 13.)  Although other cases suggest these kinds of emissions warranties may serve as the basis for a Song-Beverly claim, *see Spingola v. BMW of N. Am., LLC*, No. 18-cv-00528-JCS, 2019 WL 6050905, at *4-5 (N.D. Cal. Nov. 15, 2019) (discussing California emissions warranty as basis for Song-Beverly claim); *Yi*, 2018 WL 3359016, at *4 (same),

this Court need not resolve Defendants' argument here because Plaintiff has not provided any evidence that Defendants breached either of the Emissions Warranties. Rather, the evidence reflects Defendants repaired Plaintiff's vehicle each time it was brought in for service in conformance with applicable warranties, including the Emissions Warranties. (*See* Grijalva Decl. ¶6) (stating 2017 repair was covered under Federal Emission Warranty). Thus, absent evidence of a breach of those Warranties, Defendants are entitled to judgment on Plaintiff's fourth claim for breach of express warranty.

Plaintiff's final claim under the Song-Beverly Act is for breach of the implied warranty of merchantability. To satisfy the implied warranty of merchantability, the consumer good must: "(1) Pass without objection in the trade under the contract description. (2) [Be] fit for the ordinary purposes for which such goods are used. (3) [Be] adequately contained, packaged, and labeled. (4) Conform to the promises or affirmations of fact made on the container or label." Cal. Civ. Code § 1791.1(a). Defendants argue they are entitled to judgment on this claim because (1) it is untimely and (2) they are not subject to the statute.

The parties agree this claim is subject to a four-year statute of limitations. Defendants argue the statute began to run when Plaintiff purchased the vehicle on November 11, 2014. However, Plaintiff asserts the statute did not begin to run until she discovered the defect in November 2017. California law supports application of the discovery rule to this claim. *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303, (2009). "While California federal district courts have given Mexia mixed treatment," *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 (9th Cir. 2015), the Ninth Circuit has adhered to that decision, finding no "convincing evidence that the California Supreme Court would decide the issue … differently[.]" *Id.* Thus, this Court, following *Daniel*, finds the discovery rule applies. Applying the discovery rule to the facts of this case, the implied warranty claim would have accrued when Plaintiff first discovered the defect in November 2017. This case was filed within four years of that date, and thus Defendants are not entitled to judgment on this claim on the ground it is untimely.

Defendants' second argument is that the implied warranty of merchantability does not apply to this case because (1) neither Defendant was the retail seller of the vehicle and (2) the vehicle was purchased new as opposed to used. California Civil Code § 1792 states: "Unless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792. Here, there is no dispute BMWEC was neither the manufacturer nor retail seller of Plaintiff's vehicle. Therefore, it is entitled to judgment on this claim. BMWNA, however, was the manufacturer, and thus it is subject to liability.

This is so even though Plaintiff purchased the vehicle new as opposed to used. Defendants attempt to avoid this finding by citing to California Civil Code § 1792.2(a),[2] but as indicated in the title and body of that statute, it deals with the implied warranty of fitness, not the implied warranty of merchantability. *See Sommer v. Gen. Motors, LLC*, No. 20-CV-2161-GPC-KSC, 2021 WL 321995, at *2 (S.D. Cal. Feb. 1, 2021) ("The implied warranty of merchantability is a different basis of liability from the implied warranty of fitness.") Accordingly, this argument does not warrant judgment for Defendants on this claim.

In light of the above, Defendants are entitled to judgment on Plaintiff's first four claims under the Song-Beverly Act. Accordingly, Defendants' motion is granted as to those claims. As to Plaintiff's fifth claim for breach of the implied warranty of merchantability, Defendants' motion is granted as to BMWEC and denied as to BMWNA.

///

---

[2] This statute provides: "Every sale of consumer goods that are sold at retail in this state by a retailer or distributor who has reason to know at the time of the retail sale that the goods are required for a particular purpose, and that the buyer is relying on the retailer's or distributor's skill or judgment to select or furnish suitable goods shall be accompanied by such retailer's or distributor's implied warranty that the goods are *fit* for that purpose." Cal. Civ. Code § 1792.2(a) (emphasis added).

## C. UCL Claim

The next claim at issue is Plaintiff's UCL claim. Although the parties address the "unfair" and "fraudulent" prongs of the UCL in their briefing, Plaintiff's claim is limited to the "unlawful" prong. (*See* FAC ¶¶68-70.) Therefore, the Court will address Defendants' arguments on that prong only. On that prong, Defendants argue they are entitled to judgment because Plaintiff has failed to show a violation of the Song-Beverly Act. In light of the Court's discussion above, the Court agrees that Defendant BMWEC is entitled to judgment on Plaintiff's UCL claim. BMWNA, however, is still subject to liability on Plaintiff's breach of implied warranty claim, and thus it is not entitled to judgment on Plaintiff's UCL claim.

## D. Fraud-Based Claims

Next, Defendants argue they are entitled to judgment on all of Plaintiff's fraud-based claims (fraud by omission, fraud by concealment,[3] and intentional and negligent misrepresentation). The basis of Plaintiff's fraud claims is Defendants' alleged knowledge of the "Engine Stall Defect"[4] and their failure to disclose that Defect to Plaintiff and/or their concealment of that Defect from Plaintiff. (*Id.* ¶32, 34, 36.) Plaintiff alleges Defendants had knowledge of the defect both when Plaintiff purchased the vehicle in November 2014, and when Plaintiff first brought the vehicle in for repairs in November 2017. (*Id.*) Plaintiff's misrepresentation claim is apparently based on misrepresentations Defendants made to Plaintiff on November 14, 2017, and May 10, 2019, concerning the Song-Beverly Act. (*Id.* ¶49.) Defendants assert they are entitled to judgment on all of these claims because (1) the claims are barred by the economic loss rule, (2) Defendants had no knowledge of a defect in Plaintiff's vehicle, (3) Defendants had no duty to disclose

---

[3] Plaintiff alleges two separate claims for fraud by concealment, but those claims are identical, and hence duplicative. (*See* FAC at 10, 12.)

[4] Plaintiff describes the "Engine Stall Defect" as "one or more design and/or manufacturing defects which would cause the engine to, among other things, stall and 'die-out' while under load and/or under acceleration[.]" (*Id.* ¶32.)

any defect to Plaintiff, (4) Defendants did not actively conceal any defect from Plaintiff, (5) Plaintiff did not reasonably rely on any of Defendants' representations, and (6) Plaintiff has no evidence of damages.

Turning first to the fraud claims, Defendants argue there is no evidence they had any knowledge of a defect in Plaintiff's vehicle. *See Croeni v. Goldstein*, 21 Cal. App. 4th 754, 758 (1994) (stating first element of claim for fraud is "a knowingly false representation by the defendant"). Plaintiff disputes this argument and cites evidence in support, but the evidence she cites does not raise a genuine issue of material fact on the element of Defendants' knowledge. The first piece of evidence Plaintiff relies on is the SIB. That Bulletin extends the warranty for the high pressure fuel pump in Plaintiff's vehicle, (Johnson Decl., Ex. 12), but it does not demonstrate Defendants had any knowledge of a defect in Plaintiff's vehicle either when she purchased the vehicle in 2014 or first brought it in for repairs in 2017. *See Harris v. Carmax Auto Superstores W. Coast, Inc.*, No. CV 15-6606 FFM, 2017 WL 1713038, at *5 (C.D. Cal. Apr. 25, 2017) (stating "cursory reference to service bulletins" does not support opinion that vehicle had latent defect at time of purchase); *see also Cousyn for Cousyn Grading & Demo Inc v. Ford Motor Co.*, No. EDCV172051DOCKKX, 2019 WL 3491930, at *8 (C.D. Cal. July 30, 2019) (stating Technical Service Bulletins "fail[ed] to show that Defendant's representations to Plaintiff were false, much less knowingly so.") The second piece of evidence Plaintiff relies on is the deposition of Daniel Luker, Defendants' 30(b)(6) designee, but the testimony cited does not reflect Defendants had any knowledge of a defect in Plaintiff's vehicle at the relevant times. (*See* Johnson Decl., Ex. 14 at 175:12-14) (discussing return of damaged parts to BMW). The third and fourth items of evidence are the 2017 and 2019 repair records for Plaintiff's vehicle, (Johnson Decl., Exs. 8, 10), which also do not reflect that Defendants had any knowledge of a defect at the relevant times. In the absence of evidence that raises a genuine issue of material fact on this element, Defendants are entitled to judgment on Plaintiff's fraud claims.

///

On the misrepresentation claim, Defendants rely on the same arguments raised on the fraud claims and raise an additional argument that Plaintiff cannot prove she reasonably relied on Defendants' representations. The contours of Plaintiff's misrepresentation claim are unclear, but according to the FAC, it is based on conduct that occurred on November 14, 2017, and May 10, 2019. (FAC ¶49.) According to Plaintiff's Declaration, those are the dates she picked up her vehicle from BMWEC. (Dong Decl. at 2-3.) Specifically, Plaintiff states that on November 14, 2017, she spoke with a BMW representative, who told her "that the high-pressure fuel pump failed, causing metal to fly inside the fuel system, and that they had to replace the entire fuel system." (*Id.* ¶17.) Plaintiff states she asked the representative "if there were other cars reported to BMW having similar issues[,]" (*id.* ¶18), and the representative told her "there were other cars having similar issues, and I just happened to be the 'unlucky one.' The representative also told me that they did not know if it was going to happen again." (*Id.* ¶19.) Plaintiff states the representative "told me that the repairs would cost roughly $11,500.00, but I would not need to pay them as they were covered under warranty." (*Id.* ¶20.) Plaintiff states that on May 20, 2019, a BMW representative told her "that the high-pressure fuel pump broke again, but they could not determine what was causing the fuel pump to brake." (*Id.* ¶25.) Plaintiff states she asked the representative if there was anything she could do "to avoid this from happening again[,]" (*id.* ¶26), and the representative "told me there was nothing I could do. He also told me they did not know what was causing the problem." (*Id.* ¶27.)

It is unclear which of these statements Plaintiff relies on to support her misrepresentation claim, but no matter which statement or statements are at issue, Plaintiff has not come forward with evidence to raise a genuine issue of material fact sufficient to survive Defendants' request for summary judgment. To prevail on this claim, Plaintiff must prove the following elements: "(1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." *Conroy v. Regents of Univ. of Cal.*, 45 Cal.
///

4th 1244, 1255 (2009) (citing *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (2003)).[5] Here, Plaintiff has not come forward with any evidence that she justifiably relied on any of the statements set out immediately above, or that she suffered any damage therefrom. As stated above, both of the repairs to Plaintiff's vehicle were covered by Defendants, the first by the Federal Emissions Warranty and the second by the Extended Parts Warranty. The only apparent economic damage Plaintiff suffered in this case was the cost of the service contracts, but Plaintiff completed those purchases on November 7, 2017, fourteen days before any of the statements identified above were made. On this record, Defendants are entitled to summary judgment on Plaintiff's misrepresentation claim, as well.

**E.     Conspiracy**

The final claim at issue here is Plaintiff's claim for conspiracy. "As is well established, civil conspiracy is not an independent tort." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995). "Rather, civil conspiracy is a 'legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.'" *Id.* (quoting *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-511 (1994)). In this case, Plaintiff alleges there was a conspiracy between BMWNA and its agent BMWEC to defraud Plaintiff. (FAC ¶72.) However, Plaintiff has failed to produce any evidence to support this allegation. In the absence of any evidence that raises a genuine issue of material fact, Defendants are entitled to judgment on this theory of liability.

///

///

///

---

[5] The elements of negligent misrepresentation are the same, except for the state of mind element, which "requires that the defendant 'lacked any reasonable ground for believing [its] statement to be true[.]'" *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 417 (C.D. Cal. 2012) (quoting *Charnay v. Cobert*, 145 Cal. App. 4th 170, 184 (2006)).

# III.

# CONCLUSION AND ORDER

For these reasons, the Court grants in part and denies in part Defendants' motion for summary judgment. Specifically, the Court grants the motion as to Plaintiff's first, second, third, fourth, sixth, seventh, eighth, ninth, tenth, and twelfth claims, and denies the motion as to Plaintiff's fifth claim. On Plaintiff's eleventh claim, the Court grants the motion as to BMWEC, and denies the motion as to BMWNA.

**IT IS SO ORDERED**.

Dated:  March 4, 2021

Hon. Dana M. Sabraw, Chief Judge
United States District Court